SEAMAN *et al.* *v.* ADLER *et al.*

*(Circuit Court, E. D. Louisiana.   January 9, 1889.)*

SHIPPING—FREIGHT—LIABILITY OF CONSIGNEE.

   The consignee of merchandise, who is also owner, is liable for the freight thereon, though without fault of the ship's crew it has, by exposure to severe weather before shipment, become worthless at the time of delivery.

In Admiralty.   Libel for freight.   On appeal from district court.

Libel by S. H. Seaman and others, owners of the ship Louisiana, against A. Adler and others for freight money.   Judgment for libelants, and respondents appeal.

*Fergus Kernan*, for appellants.

*E. W. Huntington*, for appellees.

PARDEE, J.   In January, 1887, Adler & Co. ordered through merchandise brokers in New York 200 barrels of Irish potatoes, to be shipped to them at New Orleans.   The potatoes were bought from Oscar Frommel & Bro., who delivered the same to the steam-ship Louisiana, consigned to A. Adler & Co., at New Orleans.   At the time of delivery to the ship the weather was very cold, and it is a fair inference, from the evidence of the case, that during the loading and hauling necessary, the potatoes were frost-bitten.   On her voyage to this port the steam-ship Louisiana was delayed by an accident to her machinery some 10 days. The potatoes arrived here in a rotten and worthless condition.   Adler & Co. sent down for a dray-load, and had carted to their store about 50 barrels, which they examined, and discovered the rotten condition of the potatoes; whereupon they refused to accept any more.   The agent of the Louisiana demanded the freight of Adler & Co., which was refused, and thereupon, between Adler & Co. and the steam-ship's agent, a telegram was drawn up to the shippers, Frommel & Bro., inquiring what disposition should be made of the potatoes, and asking for authority to

pay the freight for their account. To this telegram no answer was received, and thereupon Adler & Co. gave orders to Morphy, auctioneer, to sell the potatoes at public auction for account of whom it might concern. At the auction sale they did not bring the price of the barrels in which they were packed, and not enough to pay freight. Adler & Co. still refusing to pay freight, the owners of the steam-ship bring a libel *in personam* for the freight money.

The questions presented for decision are—*First.* Whether the vessel earned her freight money. *Second.* If she has earned her freight money, are Adler & Co. liable therefor? There doesn't seem to be any trouble under the evidence in finding that the vessel earned freight money. The potatoes, it is true, were received in apparent good order; but they were properly stowed, and received no injury while on board, except it may be from delay. The delay was caused by an accident to the machinery, which is one of the excepted perils mentioned in the bill of lading. It is pretty clear from the evidence that the damage to the potatoes was caused by cold weather at the time of delivery in New York. On the second point, a great deal of argument has been had, tending to show that a consignee is not liable for freight money unless he receives the goods, and the law on this point may be taken to be that way. See Abb. Shipp. marg. p. 421; and Macl. Shipp. 500. The case shows, however, that Adler & Co., although nominally, in the bill of lading, consignees, really were the owners of the goods. It is clear that when they ordered potatoes in New York, to be shipped to them at New Orleans, that the contract of sale was complete upon the delivery of the goods to the carrier. See Abb. Shipp. 326. Authorities might be multiplied to any extent upon this point. The real case is that Adler & Co. shipped the potatoes by the Louisiana, which vessel complied, in all respects, with its contract as a carrier. "It may happen, however, that goods existing in species, when brought to the place of destination, are so deteriorated in condition as not to be worth the freight; and then arises the question whether the merchant is bound to pay the freight, or is at liberty to abandon the goods to the ship-owner for his claim. In considering it, the causes from which the deterioration in the merchandise may proceed, must be distinguished. If it proceeds from the fault of the master or mariners, the merchant is entitled to a compensation, and may recover it against the owners or master." Macl. Shipp. 469. "On the other hand, if the deterioration proceeds from an intrinsic principle of decay naturally inherent in the commodity itself, whether active in every situation, or only in the confinement and closeness of the hold of the ship, the merchant must bear the loss, and pay the freight. The master and owners are in no fault; nor does their contract, though taken as the contract of common carriers, contain any insurance or guaranty against such an event." Id. 470. Judgment must go for the libelants.